**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | |
| ANDREW WESLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 12 C 2226 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| TARRY WILLIAMS, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Andrew Wesley, currently in the custody of Tarry Williams, warden of Stateville

Correctional Center in Joliet, Illinois,[1] is serving a fifty-five-year prison sentence for first-degree

murder based on a conviction in the Circuit Court of Cook County on August 7, 2006.  (Dkt. 1.)

Wesley has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

asserting that he was denied the right to effective assistance of counsel in violation of the Sixth

and Fourteenth Amendments to the United States Constitution.  (*Id.*)  For the reasons stated

below, his petition is denied.  The court certifies one issue for appeal.

---

[1] The petition names Marcus Hardy, warden of Stateville Correctional Center at the time the petition was filed, as respondent.  (Dkt. 1.)  Tarry Williams was appointed warden of Stateville Correctional Center after the petition was fully briefed.  Accordingly, he has been substituted as respondent for Marcus Hardy.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

# BACKGROUND[2]

## I.      Factual Background

The facts as summarized by the Illinois Appellate Court are as follows:  On May 15, 2005, Leroy Graham and the victim, Malik Jones, began arguing over whether Jones could continue to sell marijuana at the parking lot of the Three Stooges liquor store.  *People* v. *Wesley*, 888 N.E.2d 681, 682, 382 Ill. App. 3d 588, 321 Ill. Dec. 162 (2008).  While the two men argued, a group of people gathered around them.  *Id.*  Jones turned to walk away, and an African-American male wearing his hair in braids and a black "hoodie" sweatshirt stepped out of the crowd and shot Jones five to six times.  *Id.*  Jones died as a result of the gunshot wounds.  *Id.*

Wesley was arrested for the murder of Jones on July 11, 2005, and Detective Patrick Golden interviewed him the following day.  *Id.*  Wesley initially told Golden that he was not friends with Graham and denied being at the Three Stooges liquor store when Jones was shot.  *Id.*  During a second interview with Golden, Wesley again denied having any knowledge about Jones's shooting.  *Id.*  Later, Deborah Johnson (Jones's significant other) and Gregory Jenkins identified Wesley as the shooter from a lineup.  *Id.*  During a third interview, Golden advised Wesley that "several individuals had identified him as the shooter."  *Id.* (internal quotation marks omitted).  At that point, Wesley admitted that his two prior statements had been false and that he had witnessed the argument between Graham and Jones on the day in question.  *Id.*

Wesley stated that he was standing next to Graham before he, Wesley, went into the liquor store twice.  *Id.*  Wesley explained that after exiting the store the second time, he saw Johnson attempting to convince Jones to leave the crowd.  *Id.* at 682–83.  Then, an individual

---

[2] The facts in this section are derived from the state court opinions and the record.  For a habeas review, "state court factual findings that are reasonably based on the record are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence." *Kaczmarek* v. *Rednour*, 627 F.3d 586, 589 (7th Cir. 2010) (citations omitted); *see also* 28 U.S.C. § 2254(e)(1).  The court thus adopts the state courts' recitation of the facts.

wearing a black sweatshirt emerged from the crowd, "raised his arm, produced a handgun, and shot [Jones] five to six times." *Id.* at 683 (internal quotation marks omitted). Wesley admitted telling individuals to leave the parking lot before the police arrived, denied that he shot Jones, and admitted that he wore his hair in braids at the time of the murder. *Id.*

Assistant State's Attorney Bryan Hofeld also interviewed Wesley. *Id.* Wesley told Hofeld that he had been at the Three Stooges liquor store when the shooting occurred but had been unable to ascertain the identity of the shooter. *Id.* When Hofeld asked Wesley why he would lie to the police about not being at the scene if he was not involved in the shooting, and why witnesses would identify Wesley as the shooter if he had not committed the crime, Wesley was unable to offer an explanation. *Id.*

## II.    Procedural History

### A.    Relevant Trial Proceedings

#### 1.    *Voir Dire*

During *voir dire*, a prospective juror, Keisha A., indicated that her relative had been murdered in a manner similar to Jones. *People* v. *Wesley*, No. 1-09-2322, 2011 WL 9740854, at *6 (Ill. App. Ct. Mar. 25, 2011); (dkt. 13-3 Exh. O at N-95.) The trial court then questioned her as to whether she could be fair and impartial in light of this experience, and Keisha A. responded that she could. *Wesley*, 2011 WL 9740854, at *6; (dkt. 13-3 Exh. O at N-96–97.) Later, Wesley's counsel questioned Keisha A. and asked her whether she could set her experience aside and judge the case on the facts and the law. *Wesley*, 2011 WL 9740854, at *6; (dkt. 13-4 Exh. P at N-114.) Keisha A. responded that she could not be sure. *Wesley*, 2011 WL 9740854, at *7; (dkt. 13-4 Exh. P at N-114.) Wesley's counsel then moved to strike Keisha A. for cause, but the trial court denied the request. *Wesley*, 2011 WL 9740854, at *7; (dkt. 13-4 Exh. P at N-115.)

Wesley's counsel declined to use a peremptory challenge, and Keisha A. was seated on the jury. *Wesley*, 2011 WL 9740854, at *7. Defense counsel used only one peremptory challenge during jury selection. *Id.*

### 2. Trial Testimony

Johnson and Jenkins, both eyewitnesses who identified Wesley as the shooter from a lineup, testified at trial. Johnson testified that during Graham's argument with Jones, she heard Graham tell Wesley to "gun that [expletive] down." *Wesley*, 888 N.E.2d at 683 (alteration in original) (internal quotation marks omitted). Johnson then saw Wesley pull a gun from his waistband and shoot Jones six times. *Id.*

Jenkins acknowledged that after an arrest for possession of a controlled substance on May 28, 2005, he met with Detective Kevin Bor and Hofeld and signed a statement that he had witnessed Wesley shoot Jones six to seven times. *Id.* at 684. Jenkins testified, however, that his handwritten statement to police was not true and that he gave the police information regarding Jones's murder so that his charge for possession of a controlled substance would be dismissed. *Id.* The State was allowed to read Jenkins's prior statement to police into evidence.[3] *Id.*

Demetrius Clair testified that he was present at the scene of Jones's murder and saw Wesley disappear into the crowd after Graham motioned towards Wesley with his hand. *Id.* at 683–84. Clair testified that he told Jones that Wesley was going to get a gun. *Id.* at 684. Clair then testified that he turned around, walked three steps, and heard four to five gunshots. *Id.*

Marcus Scott testified that after an arrest for drug conspiracy on September 14, 2005 he met with the police and Assistant State's Attorney Kim Ward and signed a statement that he saw Wesley come out of the liquor store and shoot Jones multiple times. *Id.* Scott's statement also

---

[3]Jenkins's grand jury testimony identifying Wesley as the shooter was also read to the jury. *Wesley*, 2011 WL 9740854, at *1.

asserted that Brandon Foster, who was Graham's "right hand man," had approached Scott and said that three individuals had picked Wesley out of a lineup as the shooter and that "they better hope that [Graham] doe[sn't] find out" who identified Wesley. *Id.* at 685 (alterations in original) (internal quotation marks omitted); (dkt. 13-5 Exh. Q at P-186–87.) Scott admitted that he had testified to these same facts before the grand jury. *Wesley*, 888 N.E.2d at 684. At trial, however, Scott denied that he was present at the liquor store at the time of the shooting and testified that he gave his statement in order to have his drug conspiracy charges dismissed. *Id.* The State was allowed to read Scott's prior statement to police into evidence, with a limiting instruction directing the jury to consider the comments attributed to Foster only for the purpose of explaining Scott's interest or bias in recanting his prior identification of Wesley as the shooter. *Id.* at 684–86. Wesley's counsel neither objected to the testimony nor raised the issue in a post-trial motion. *Id.* at 685.

Both Golden and Hofeld recounted their interrogations of Wesley. *Id.* at 682–83. Golden testified that during his third interview with Wesley, he "advised [Wesley] that several individuals had identified him as the shooter." *Id.* at 682 (internal quotation marks omitted). Hofeld testified that he asked Wesley why people would identify him as the shooter if he had not committed the crime. *Id.* at 683. Wesley's trial counsel did not object to Golden's or Hofeld's testimony at trial or raise the issue in a post-trial motion. *Id.* at 685.

Following trial, Wesley was convicted of two counts of first-degree murder. *Id.* at 682. He was sentenced to a fifty-five year prison term. *Id.*

## B.    Direct Appeal

On direct appeal, Wesley challenged his conviction on three grounds:[4]  (1) that the State had failed to prove its case beyond a reasonable doubt; (2) that his constitutional right to confrontation had been violated when the State repeatedly introduced into evidence that unknown individuals had identified Wesley as the shooter; and (3) that one of Wesley's convictions for first-degree murder must be vacated under the one-act, one-crime rule.  *Id.*; (dkt. 13-1 Exh. A at i–ii.)  Alternatively, Wesley contended that his trial counsel had been ineffective in failing to object to hearsay testimony or raise the issue in a post-trial motion.  (Dkt. 13-1 Exh. A at 33.)  The Illinois Appellate Court affirmed Wesley's conviction, holding that the evidence, viewed in the light most favorable to the prosecution, was not "so improbable or unsatisfactory that a reasonable doubt of defendant's guilt remains as a matter of law."  *Wesley*, 888 N.E.2d at 684.  Regarding the alleged hearsay testimony, the appellate court addressed only Scott's handwritten statement relating hearsay.  *Id.* at 685.  The appellate court then concluded that any prejudice caused by Scott's statement was cured by the trial court's limiting instruction to the jury.  *Id.* at 686.

Wesley filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, raising the ineffective assistance of counsel claim regarding the alleged hearsay testimony.  (*See* dkt. 13-1 Exh. E at 3.)  The court denied the PLA on September 24, 2008.  (Dkt. 13-2 Exh. F.)  Wesley then filed a petition for a writ of certiorari, which the United States Supreme Court denied on February 23, 2009.  *Wesley* v. *Illinois*, 555 U.S. 1181, 129 S. Ct. 1330, 173 L. Ed. 2d 603 (2009) (mem.).

---

[4] Wesley was represented by counsel on direct appeal.

### C.      Post-Conviction Proceedings

On April 29, 2009, Wesley filed a timely *pro se* post-conviction petition requesting that his conviction be vacated.  *Wesley*, 2011 WL 9740854, at *2; (dkt. 13-3 Exh. N at Page ID #403.)  Wesley maintained that his trial counsel had been ineffective for failing to investigate or call four alibi witnesses to testify at trial.  *Wesley*, 2011 WL 9740854, at *2.  Wesley also argued that trial counsel had been ineffective for failing to use a peremptory challenge to strike Keisha A.  *Id.*

The circuit court summarily dismissed the petition and the appellate court affirmed on March 25, 2011.  *Id.* at *3, *8.  The appellate court rejected Wesley's ineffective assistance of counsel claims, finding that neither set forth the gist of a constitutional claim.  *Id.* at *6, *8.  In assessing Wesley's peremptory challenge claim, the appellate court acknowledged the State's argument that Wesley had forfeited review of the issue but still considered it on the merits.  *Id.* at *7.  The court opined that the argument was patently without merit because Wesley "failed to show that defense counsel's decisions, questionable as they might be, were not tactical and a matter of jury selection strategy" and failed to show actual prejudice.  *Id.* at **7–8.  Wesley then filed a PLA (dkt. 13-2 Exh. L), which the Illinois Supreme Court denied on September 28, 2011 (dkt. 13-3 Exh. M).  Wesley timely filed the present petition on March 26, 2012.  (Dkt. 1.) Respondent does not dispute that the petition is timely and that no claim is barred by non-retroactivity or failure to exhaust available state court remedies.  As such, the court proceeds to the merits of Wesley's claims.

## LEGAL STANDARD

A petitioner is entitled to habeas relief only if the state court's rejection of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2); *Williams* v. *Taylor*, 529 U.S. 362, 376, 386, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

A state court decision is "contrary to" clearly established Supreme Court law "'if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court]'" or "'if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it].'" *Bell* v. *Cone*, 543 U.S. 447, 452–53, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (quoting *Williams*, 529 U.S. at 405). A state court unreasonably applies Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. A state court's application of Supreme Court precedent is unreasonable only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedent[]." *Harrington* v. *Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

For claims of ineffective assistance of counsel, the standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) governs whether counsel's performance is constitutionally effective. *See id.* at 91. *Strickland* dictates that the party making the ineffective assistance claim must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for

counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. This standard is viewed through the lens of § 2254(d)(1)'s "contrary to" or "unreasonable application of" provisions: "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. A habeas petitioner "'must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance . . . . [H]e must show that the [Illinois Appellate Court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.'" *Emerson* v. *Shaw*, 575 F.3d 680, 685 (7th Cir. 2009) (alterations in original) (quoting *Cone*, 535 U.S. at 698–99).

## ANALYSIS

Wesley asserts that trial counsel was ineffective for three primary reasons: (1) failing to object to the admission of certain hearsay statements either at trial or in a post-trial motion, (2) failing to exercise a peremptory challenge to strike Keisha A., and (3) failing to investigate two alibi witnesses and call four alibi witnesses to testify at trial.[5]

## I.    Claim 1

Wesley contends that trial counsel's failure to object to the admission of hearsay testimony from Scott, Golden, and Hofeld, as well as trial counsel's failure to raise the issue in a post-trial motion, constituted ineffective assistance of counsel. Although the appellate court did not cite *Strickland* in considering this claim, it cited *People* v. *Jura*, 817 N.E.2d 968, 352 Ill. App. 3d 1080, 288 Ill. Dec. 318 (2004), which in turn cited *Strickland*. *Wesley*, 888 N.E.2d at

---

[5] "A document filed *pro se* is 'to be liberally construed.'" *Erickson* v. *Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citation omitted); *see also Ray* v. *Clements*, 700 F.3d 993, 1002–03 (7th Cir. 2012). As such, the court has analyzed and synthesized Wesley's arguments into the claims listed.

685. The appellate court's "short-hand" reference to *Strickland* reflects that the appellate court relied on governing federal law. *See Sussman* v. *Jenkins*, 636 F.3d 329, 359–60 (7th Cir. 2011) (a "short-hand" reference to *Strickland* is satisfactory); *Garth* v. *Davis*, 470 F.3d 702, 710 (7th Cir. 2006) (a "decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of § 2254(d)(1)" (citation omitted)). The court, therefore, analyzes whether the appellate court unreasonably applied federal law, specifically the *Strickland* standard.

As related above, at trial, Scott recanted his prior identification of Wesley as the shooter and denied that he had been present at the scene of the crime. This prompted the court to allow the State to read Scott's prior statement into evidence. *Wesley*, 888 N.E.2d at 684. Scott's otherwise admissible statement, *see* Ill. R. Evid. 613, also related hearsay, however, including that Foster, who was Graham's right hand man, approached Scott and said that three individuals had "picked [Wesley] out of a lineup" as the shooter and that "they better hope that [Graham doesn't] find out" who identified Wesley. (Dkt. 13-5 Exh. Q at P-186–87.) Scott interpreted this to mean that Graham would kill the individuals who had identified Wesley as the shooter. (*Id.* at P-187.) The court instructed the jury to consider the portion of the statement attributed to Foster only as to Scott's bias or motive for testifying as he did at trial. *Wesley*, 888 N.E.2d at 685–86.

Golden interviewed Wesley three times after his arrest. *Id.* at 682. At trial, Golden testified that during the first interview, Wesley "denied any knowledge or participation in the shooting death of" Jones. (Dkt. 13-7 Exh. S at S-60–61.) During a second interview, Wesley "relayed the same basic facts . . . regarding his story regarding the death of Malik Jones." (*Id.* at S-62.) Golden then testified that following the second interview, Johnson and Jenkins identified Wesley as the shooter from a lineup. *Wesley*, 888 N.E.2d at 682. During a third interview, he

"advised . . . Wesley that several individuals had identified him as the shooter." (Dkt. 13-7 Exh. S at S-65.)

Hofeld also interviewed Wesley after his arrest. *Wesley*, 888 N.E.2d at 683. Wesley told Hofeld that he had been at the Three Stooges liquor store when the shooting occurred but had been unable to determine the shooter's identity. (Dkt. 13-7 Exh. S at R-209–11.) Hofeld then testified that he asked Wesley two questions: "Why would you lie to the police if you're not involved in this[?]" and "Why would people identify you as the shooter . . . if you're not the shooter in this case?" (*Id.* at R-211–12.)

On direct appeal, Wesley argued that his Sixth Amendment right to confrontation of witnesses had been violated. The Illinois Appellate Court pointed out that Wesley did not rely on *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct 1354, 158 L. Ed. 2d 177 (2004), but only contended generally that the hearsay statements violated his right of confrontation. *Wesley*, 888 N.E.2d at 685. Because *Crawford* "'eliminate[ed] . . . Confrontation Clause protection against the admission of unreliable out-of-court nontestimonial statements,'" Wesley had no possible Confrontation Clause argument. *Id.* (quoting *Whorton* v. *Bockting*, 549 U.S. 406, 420, 127 S. Ct. 1173, 1183, 167 L. Ed. 2d 1 (2007)). The appellate court also found that Wesley had forfeited his argument that testimony regarding several individuals identifying him as the shooter constituted inadmissible hearsay because he did not object to the testimony at trial or raise the issue in a post-trial motion. *Id.* Nor could Wesley circumvent forfeiture by arguing that admitting the hearsay testimony amounted to plain error, because "[f]our eyewitnesses identified defendant as the shooter, and defendant admitted he was present when the murder occurred." *Id.* Further, "the alleged evidentiary errors were not so serious as to deny defendant a right to a fair trial." *Id.*

Turning to Wesley's alternative argument that his trial counsel had been ineffective for failing to preserve the alleged errors, the appellate court explained that "[t]he only complained of testimony we take issue with in this case is the allegedly improper hearsay statement contained in Marcus Scott's handwritten statement." *Id.* The appellate court correctly acknowledged that the portion of Scott's written statement attributed to Foster was inadmissible hearsay but concluded that any prejudice caused by the admission of the hearsay statement was cured by the trial court's limiting instruction to the jury. *Id.* at 686.

The appellate court's determination of no prejudice was reasonable in relation to the applicable federal law and facts as presented to it. In determining whether an attorney's deficient performance prejudiced the defense, the evaluating "court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Accordingly, the appellate court was entitled to assume that the jury followed the limiting instruction absent substantial evidence to the contrary. *See United States* v. *Albiola*, 624 F.3d 431, 440 (7th Cir. 2010) (citing *United States* v. *Williams*, 216 F.3d 611, 615 (7th Cir. 2000)); *McMillian* v. *United States*, No. 08 C 5828, 2010 WL 3526500, at *3 (N.D. Ill. Sept. 1, 2010). Wesley has not indicated that he presented substantial evidence to the Illinois Appellate Court that the jury did not follow the trial court's instruction. Thus, the appellate court's finding with respect to Scott's statement was not an unreasonable application of federal law. *See Price* v. *Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011) ("[A] state court's determination that a defendant was not prejudiced by his lawyer's ineffectiveness is entitled to great weight in a federal habeas corpus proceeding.").

In not addressing Golden's and Hofeld's statements, the Illinois Appellate Court implicitly determined that Wesley's trial counsel had not been ineffective in failing to object to the alleged hearsay contained in their testimony. *See Wesley*, 888 N.E.2d at 685 ("The only

complained of testimony we take issue with in this case is the allegedly improper hearsay statement contained in Marcus Scott's handwritten statement."). That conclusion was not an unreasonable application of federal law. Counsel could well have decided that, in light of the four trial eyewitnesses who identified Wesley as the shooter, an objection to Golden's and Hofeld's testimony would have only called more attention to the eyewitness accounts. Or counsel might have accepted that the statements were not hearsay. *See People* v. *Hanson*, 939 N.E.2d 238, 254–55, 238 Ill. 2d 74, 345 Ill. Dec. 395 (2010) (detective's statement to defendant that "Jennifer thinks you did this" did not constitute hearsay when the statement was introduced at trial, not for its truth, but to provide context for the detective's investigation); *United States* v. *Lee*, Nos. 99 C 6747, 94 CR 187-11, 1999 WL 1144928, at *3 (N.D. Ill. Dec. 8, 1999) ("[I]t was not ineffective assistance for counsel to let the statement come in without a hearsay objection, because it was not hearsay."). Wesley's petition is denied on this ground.

## II.     Claims 2 and 3

Wesley contends that trial counsel's failure to exercise a peremptory challenge to strike Keisha A. constituted ineffective assistance of counsel. Wesley also challenges trial counsel's failure to investigate two alibi witnesses and to call four alibi witnesses to testify at trial. In considering these claims, the Illinois Appellate Court properly set forth the *Strickland* standard. *Wesley*, 2011 WL 9740854, at *3. Accordingly, as with claim 1, the appellate court's decision was not "contrary to" federal law, and the court focuses its inquiry on whether the Illinois Appellate Court unreasonably applied the *Strickland* standard.

### A.     Claim 2

During *voir dire*, Keisha A. indicated that her relative had been murdered in a manner similar to Jones. *Id.* at *6; (dkt. 13-3 Exh. O at N-95.) Thereafter, the trial court questioned her

as to whether she could be fair and impartial in light of this experience. *Wesley*, 2011 WL 9740854, at *6; (dkt. 13-3 Exh. O at N-96–97.) In response, Keisha A. indicated that she could decide the case based on the evidence and the law, that she would not give more or less weight to the testimony of a police officer than to that of a civilian witness, and that she would not hesitate to find Wesley not guilty if the State failed to prove its case beyond a reasonable doubt. *Wesley*, 2011 WL 9740854, at *8; (dkt. 13-3 Exh. O at N-96.) Further, Keisha A. affirmed that she would follow the court's instructions on the law and that she would discuss and deliberate the evidence and the law with her fellow jurors. (Dkt. 13-3 Exh. O at N-96–97.)

Later, Wesley's counsel questioned Keisha A. regarding the prior incident:

> [Defense Counsel]: If you were picked on this jury would you set that aside and decide this case on the facts and the law that apply to this case or would you still remember that?
>
> [Keisha A.]: It's hard to say. I would try to listen.
>
> [Defense Counsel]: Can you be sure that you will set that aside or not?
>
> [Keisha A.]: I can't be sure.

*Wesley*, 2011 WL 9740854, at **6–7 (alterations in original); (dkt. 13-4 Exh. P at N-114.) Outside the presence of the jury, Wesley's counsel moved to strike Keisha A. for cause. *Wesley*, 2011 WL 9740854, at *7; (dkt. 13-4 Exh. P. at N-120.) The trial court denied the request, however, noting that she had previously indicated to the court "that she could be fair and impartial notwithstanding her experience." (Dkt. 13-4 Exh. P at N-120–21.) The court stated, "I don't believe that her answers rose to a level where strike for cause is appropriate." (*Id.* at N-121.) Then, according to Wesley, he directed his counsel to use a peremptory challenge to strike Keisha A., and counsel agreed. *Wesley*, 2011 WL 9740854, at *7. Wesley's counsel, however,

elected not to do so and used only one peremptory challenge during jury selection.  *Id.*  Keisha A. was selected to serve on the jury.  *Id.*

On appeal from the trial court's summary dismissal of Wesley's *pro se* post-conviction petition, the Illinois Appellate Court found that Wesley had  "failed to show that defense counsel's decisions, questionable as they might be, were not tactical and a matter of jury selection strategy."  *Id.* at *8 (citation omitted).  In addition, the Illinois Appellate Court determined that Wesley had failed to establish that he had been prejudiced by counsel's decision not to use a peremptory challenge.  *Id.*  The appellate court explained that the evidence presented at trial was sufficient to prove Wesley guilty beyond a reasonable doubt, and that it could not say that the result of Wesley's trial would have been different had Keisha A. not served on the jury, particularly when Keisha A. "did not indicate a clear and strong bias against the defendant in her *voir dire* responses" and provided the court with an assurance of impartiality.  *Id.*

Deciding whether to strike a juror is a matter of trial strategy to which deference is generally owed.  *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); *see also Cage* v. *McCaughtry*, 305 F.3d 625, 626–27 (7th Cir. 2002) (noting that "there is nothing suspicious about a lawyer's refusing to strike a prospective juror" because the "lawyer might feel that on balance the juror was more likely to vote for than against his client").  This is because an assessment of impartiality "is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension."  *Skilling* v. *United States*, 561 U.S. 358, 386, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010); *see also United States* v. *Boyd*, 86 F.3d 719, 724 (7th Cir. 1996) ("No one knows in advance how a potential juror will react to the evidence, or how the jurors will interact with each other in the jury room.  Even

experienced advocates find predictions difficult.").  Thus, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689 (citation omitted) (internal quotation marks omitted).

Although it is unsettled in the Seventh Circuit whether an attorney's decision "to not strike a juror or forego obtaining an assurance of impartiality" could ever constitute a reasonable trial strategy once a juror manifests actual bias, *see United States* v. *Lathrop*, 634 F.3d 931, 938 (7th Cir. 2011) (citing *Hughes* v. *United States*, 258 F.3d 453, 463 (6th Cir. 2001)), it is settled that the burden is on the petitioner to demonstrate that counsel's decision was not reasonable.  In considering Wesley's claim, the Illinois Appellate Court found that Wesley had failed to show that his counsel's decision was not the result of an objectively reasonable trial strategy.  The Illinois Appellate Court's decision was not an unreasonable application of federal law.  *See United States ex rel. Thomas* v. *Rednour*, No. 11 C 4927, 2013 WL 2251734, at *12 (N.D. Ill. May 22, 2013) (finding that the Illinois Appellate Court reasonably concluded that the petitioner had not demonstrated ineffective assistance when trial counsel failed to use peremptory challenges to strike two jurors); *see also Richter*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

First, counsel clearly was aware of the issue, as he actively participated in *voir dire*; he asked follow-up questions and moved to strike Keisha A. for cause, factors suggesting that counsel made a deliberate decision not to strike her.  Keisha A.'s later indication to defense counsel that she could not be sure that she could set her experience aside was, to be sure,

equivocal. Neither was it necessary, as noted by the appellate court, that Keisha A. demonstrate "clear and strong" bias against the defendant. *Wesley*, 2011 WL 9740854, at *8. Nonetheless, the *voir dire* of Keisha A. does not compel the conclusion that she was, in fact, biased. As the appellate court explained, Keisha A. "specifically indicated to the trial court . . . that she would judge defendant based on the evidence and the law, and that she would not hesitate to find defendant not guilty if the State failed to prove its case beyond a reasonable doubt." *Id.* Expecting Keisha A. to set aside her experience is asking too much. Jurors, like other people, remember traumatic experiences such as the killing of a relative, but memory does not necessarily undermine their ability to evaluate the facts based on the evidence presented at trial. *Cf. Hughes*, 258 F.3d at 456 (juror demonstrated actual bias by stating, "I don't think I could be fair" and not providing an assurance of impartiality). Without indication in the record that Keisha A.'s experience was so similar to Wesley's situation that emotion would potentially overcome her reason, the court cannot conclude that the state court's finding her unbiased was an unreasonable determination. Having reached this conclusion, the court need not address the appellate court's determination that Wesley had not demonstrated prejudice, or whether, as the Sixth Circuit has held, "prejudice under *Strickland* is presumed, and a new trial required" if a biased juror is impaneled. *Id.* at 463.

## B.      Claim 3

Finally, Wesley objects to his counsel's failure to investigate and call certain alibi witnesses to testify at trial. In his post-conviction petition, Wesley listed the names of four alibi witnesses—Melissier Shields, Tiffany Wesley, Loretta Wesley, and Ira Hamilton—along with their affidavits stating that he was sleeping in his bedroom at Loretta Wesley's house with his son on the night of the murder. *Wesley*, 2011 WL 9740854, at *4. Two of the witnesses, Shields

and Tiffany Wesley, stated in their affidavits that defense counsel had never interviewed or contacted them prior to trial. *Id.* Wesley maintains that his attorney's failure to call any of the four alibi witnesses to testify at trial, or to investigate or interview Shields or Tiffany Wesley, constituted ineffective assistance of counsel that prejudiced the outcome of trial.

On appeal, the Illinois Appellate Court noted that defense counsel had been aware of Loretta Wesley's and Hamilton's proposed alibi testimony prior to trial and had disclosed Loretta Wesley as a potential alibi witness to the prosecution during discovery. *Id.* at *6. According to the appellate court, however, defense counsel had strategic reasons for not putting them on the stand. *Id.* First, both Loretta Wesley and Hamilton are close relatives of Wesley, and this fact would have undercut their testimony. *Id.* Second, Wesley's

> own conflicting statements to the police regarding whether he was present at the shooting, mixed with Officer Jankowski's unimpeached testimony that he saw defendant at the scene immediately after the shooting, indicate counsel easily could have determined presenting the contradictory alibi testimony to the jury would be strategically riskier than focusing solely on the unreliability of the eyewitnesses' identification of defendant as the shooter.

*Id.* Moreover, the appellate court reasoned that Shields and Tiffany Wesley are also close relatives of Wesley and that their proposed testimony would have been cumulative evidence supporting the alibi defense counsel had already decided not to present at trial. *Id.* The Illinois Appellate Court concluded that Wesley's claim of ineffective assistance failed under *Strickland*'s first prong.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Diligence is required in investigating a client's case, but an attorney need not "track down every lead or . . . personally investigate every evidentiary possibility before choosing a defense and developing it."

*Sullivan* v. *Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987).  Indeed, "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him.  In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record." *United States* v. *Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990).  Even strategic decisions made after less than complete scrutiny are generally considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 691.

Here, the Illinois Appellate Court determined that trial counsel's decision not to call the witnesses was strategic, and it was not unreasonable for the appellate court to reach this conclusion.  As an initial matter, trial counsel may have concluded that the testimony of Wesley's family members would have been minimally credible. *See Ducato* v. *United States*, 315 F.3d 729, 732 (7th Cir. 2002) ("The testimony of the defendant's close relatives would not have had much credibility.").  Further, the record indicates that trial counsel's closing argument emphasized Wesley's presence at the scene of the crime as evidence of his innocence; specifically, trial counsel questioned why Wesley, "having just shot and killed Malik Jones, is sitting on the boxed Chevrolet in the parking lot."  (Dkt. 13-8 Exh. T at S-210.)  Introducing witness testimony that Wesley had *not* been at the scene of the crime would have been inconsistent with this theory.  Moreover, although Wesley's counsel did not contact Shields or Tiffany Wesley, it was reasonable for the appellate court to conclude that Wesley's counsel may have determined that their testimony would not only raise the same credibility concerns as the testimony of Wesley's other family members, but would also support a theory he had already decided not to present. *See Strickland*, 466 U.S. at 691 ("[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a

heavy measure of deference to counsel's judgments."). Accordingly, the Illinois Appellate Court did not unreasonably apply the *Strickland* standard. Wesley's petition is denied on this ground.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c),

> (1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal.

*Davis* v. *Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003) (emphasis omitted) (internal citations omitted).

The court certifies only the issue raised in Claim 2 (the peremptory challenge claim) as a substantial constitutional question. It is fair to say that reasonable jurists could differ as to whether Wesley's trial counsel was constitutionally ineffective in failing to use a peremptory challenge to strike Keisha A. As to all other claims, for the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal as reasonable jurists would not find this court's ruling debatable. *Lavin* v. *Rednour*, 641 F.3d 830, 832 (7th

Cir. 2011) (citing *Slack* v. *McDaniel*, 529 U.S. 473, 484–85, 120 S. Ct. 1595, 146 L. Ed. 2d 542

(2000); *Davis*, 349 F.3d at 1029).

## CONCLUSION AND ORDER

For the foregoing reasons, Wesley's petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 (dkt. 1) is denied, and the court certifies only one issue for appeal under 28 U.S.C.

§ 2253(c).


Date:  May 18, 2015

_____

U.S. District Judge Joan H. Lefkow